1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

11   JOHN F. CHOPP,                    )    Case No. ED CV 12-291-SP
                                       )
12                 Plaintiff,          )
                                       )
13          v.                         )    MEMORANDUM OPINION AND
                                       )    ORDER
14                                     )
     CAROLYN W. COLVIN,                )
15   Acting Commissioner of Social Security )
     Administration,                   )
16                                     )
                   Defendant.          )
17                                     )
                                       )
18   ─────────────────────────────────

19                                     **I.**

20                             **INTRODUCTION**

21          On March 5, 2012, plaintiff John F. Chopp filed a complaint against

22   defendant, the Commissioner of the Social Security Administration

23   ("Commissioner"), seeking a review of a denial of supplemental security income

24   ("SSI") benefits.  Both plaintiff and defendant have consented to proceed for all

25   purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).

26   The court deems the matter suitable for adjudication without oral argument.

27          Plaintiff presents two issues for decision:  (1) whether the Administrative

28

                                        1

1  Law Judge ("ALJ") properly discounted plaintiff's credibility; and (2) whether the
2  ALJ erred at step five.  Memorandum of Points and Authorities in Support of
3  Plaintiff's Complaint ("P. Mem.") at 4-20; Memorandum in Support of
4  Defendant's Answer ("D. Mem.") at 2-8.

5  Having carefully studied, inter alia, the parties's moving papers, the
6  Administrative Record ("AR"), and the decision of the ALJ, the court concludes
7  that, as detailed herein, the ALJ  properly discounted plaintiff's credibility.
8  Further, although the ALJ erred in part at step five, such error was harmless.
9  Consequently, this court affirms the decision of the Commissioner denying
10  benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

13  Plaintiff, who was fifty-four years old on the date of his March 16, 2010
14  administrative hearing, is a high school graduate.  AR at 19, 51, 136.  Plaintiff has
15  no past relevant work.  *Id.* at 44, 78.

16  On April 24, 2008, plaintiff protectively filed an application for SSI,
17  alleging an onset date of November 1, 2001, due to paranoia, schizophrenia,
18  bipolar disorder, and hepatitis C.  *Id.* at 130, 136, 142.  The Commissioner denied
19  plaintiff's application initially and upon reconsideration, after which he filed a
20  request for a hearing.  *Id*. at 91-95, 98-102.

21  On March 16, 2010, plaintiff, represented by counsel, appeared and testified
22  at a hearing before the ALJ.  *Id.* at 51-85.  The ALJ also heard testimony from
23  Stephen P. Davis, a vocational expert ("VE").  *Id.* at 76-83.  On April 16, 2010,
24  the ALJ denied plaintiff's claim for benefits.  *Id.* at 35-46.

25  Applying the well-known five-step sequential evaluation process, the ALJ
26  found, at step one, that plaintiff had not engaged in substantial gainful activity
27  since April 24, 2008, the application date.  *Id*. at 37.

28

1  At step two, the ALJ found that plaintiff suffered from the following severe

2  impairments:  degenerative disc disease; intermittent explosive disorder; alcohol

3  abuse; and personality disorder.[1]  *Id.*

4  At step three, the ALJ found that plaintiff's impairments, whether

5  individually or in combination, did not meet or medically equal one of the listed

6  impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the

7  "Listings").  *Id.*

8  The ALJ then assessed plaintiff's RFC[2] and determined that he had the RFC

9  to perform medium work, with the limitations that plaintiff:  could lift/carry fifty

10  pounds occasionally and twenty-five pounds frequently; could stand/walk six

11  hours in an eight-hour workday; required an option to sit/stand every thirty

12  minutes; was precluded from work around hazardous machinery, heights, and

13  contact with the general public; required a low stress job setting, one with little to

14  no change in the day-to-day work routine; and could have occasional contact with

15  co-workers.  *Id.* at 38.  The ALJ also determined that plaintiff could understand,

16  remember, and carry out simple one- or two-step job tasks.  *Id.*

17  The ALJ found, at step four, that plaintiff had no past relevant work.  *Id.* at

18  44.

19  At step five, the ALJ found that there were jobs that existed in significant

20  numbers in the national economy that plaintiff could perform, including laborer

21  stores and porter, used car lot.  *Id.* at 44-45.  Consequently, the ALJ concluded that

22

23  [1]    The ALJ ruled out depressive disorder.  AR at 37.

24  [2]    Residual functional capacity is what a claimant can do despite existing

25  exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152,

26  1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step

27  evaluation, the ALJ must proceed to an intermediate step in which the ALJ

28  assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486
   F.3d 1149, 1151 n.2 (9th Cir. 2007).

1  plaintiff did not suffer from a disability as defined by the Social Security Act

2  ("SSA").  *Id.* at 45.

3      Plaintiff filed a timely request for review of the ALJ's decision, which was

4  denied by the Appeals Council.  *Id.* at 1-3.  The ALJ's decision stands as the final

5  decision of the Commissioner.

6                              **III.**

7                      **STANDARD OF REVIEW**

8      This court is empowered to review decisions by the Commissioner to deny

9  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

10 Administration must be upheld if they are free of legal error and supported by

11 substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

12 (as amended).  But if the court determines that the ALJ's findings are based on

13 legal error or are not supported by substantial evidence in the record, the court

14 may reject the findings and set aside the decision to deny benefits.  *Aukland v.*

15 *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

16 1144, 1147 (9th Cir. 2001).

17     "Substantial evidence is more than a mere scintilla, but less than a

18 preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

19 "relevant evidence which a reasonable person might accept as adequate to support

20 a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

21 F.3d at 459.  To determine whether substantial evidence supports the ALJ's

22 finding, the reviewing court must review the administrative record as a whole,

23 "weighing both the evidence that supports and the evidence that detracts from the

24 ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

25 affirmed simply by isolating a specific quantum of supporting evidence.'"

26 *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

27 Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

28

                                    4

1  the ALJ's decision, the reviewing court "'may not substitute its judgment for that
2  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.
3  1992)).

4  **IV.**

5  **DISCUSSION**

6  **A.     The ALJ Provided Clear and Convincing Reasons for Discounting**
7  **Plaintiff's Credibility**

8       Plaintiff complains that the ALJ failed to provide sufficient reasons to reject
9  his testimony regarding his mental limitations.  P. Mem. at 4-14.  The court
10  disagrees.

11       The ALJ must make specific credibility findings, supported by the record.
12  Social Security Ruling ("SSR") 96-7p.[3]  To determine whether testimony
13  concerning symptoms is credible, the ALJ engages in a two-step analysis.
14  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ
15  must determine whether a claimant produced objective medical evidence of an
16  underlying impairment "'which could reasonably be expected to produce the pain
17  or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d
18  341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of
19  malingering, an "ALJ can reject the claimant's testimony about the severity of her
20  symptoms only by offering specific, clear and convincing reasons for doing so."
21  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331
22  F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider several factors in

23  _____

24       [3]   "The Commissioner issues Social Security Rulings to clarify the Act's
     implementing regulations and the agency's policies.  SSRs are binding on all
25  components of the SSA.  SSRs do not have the force of law.  However, because
     they represent the Commissioner's interpretation of the agency's regulations, we
26  give them some deference.  We will not defer to SSRs if they are inconsistent with
     the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th
27  Cir. 2001) (internal citations omitted).

28

weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 41.

At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Here, the ALJ discounted plaintiff's credibility because: (1) there were contradictions between his testimony and statements he made elsewhere; (2) his daily activities were inconsistent with his symptoms; (3) he had a poor work history; (4) his symptoms were inconsistent with observations made during an in-person interview; (5) the objective medical evidence did not support his symptoms; (6) he received conservative treatment; and (7) he failed to adhere to his treatment. *Id*. at 39-44.

The first ground the ALJ provided for finding plaintiff less credible was the inconsistencies between plaintiff's testimony and other statements made by himself and a third party. *Id.* at 39-40, 43. The ALJ noted that, at the hearing, plaintiff testified that he did not drive, had no social activities other than seeing a girlfriend once a week, used a self-made cane to assist his walking, and only abused marijuana in the past. *Id.* at 39-40, 59, 61, 64, 71, 75. In plaintiff's Function Report, however, he indicated that he drove when he went out and that he did not use a cane or other assistive device. *Id.* at 159, 162. In a Third Party Function Report, plaintiff's friend indicated that she saw him three times a week. *Id.* at 148. And during his psychiatric consultative examination, plaintiff told the

examining psychiatrist that he also previously abused methamphetamine. *Id*. at 265. These inconsistences constitute a clear and convincing reason for discounting plaintiff.[4]

The second ground for an adverse credibility finding – plaintiff's daily activities were inconsistent with the severity of his symptoms – was also clear and convincing. *Id.* at 40; *see also Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (a claimant's ability "to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" may be sufficient to discredit him). The ALJ noted that plaintiff, among other things, took care of his personal needs, prepared meals, drove a car, handled money, was teaching himself to play the guitar, and attended meetings at the Behavioral Health Center. *Id.* at 40, 156-63. A claimant does not need to be "utterly capacitated," *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), and "the mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way

_____

[4]   In addition, the court notes that the record contains other inconsistencies not specifically mentioned by the ALJ that are clear and convincing reasons for finding plaintiff less credible, including his statements concerning whether he shopped at stores, whether he received inpatient mental health treatment, and his employment history. Plaintiff testified that he did not go to stores and had not been in a supermarket "for as long as [he could] remember." *Id.* at 71. But this testimony is directly contradicted by his own function report in which he wrote that he shops at stores. *Id.* at 159. As for his mental health treatment, plaintiff made several statements to psychologists at the California Department of Corrections ("DOC") that he had not received any inpatient mental health treatment, but he told the consultative examiner that he had two admissions to a psychiatric hospital. *Id.* at 243, 265, 333. Plaintiff also testified that he had not worked in years and listed only one job in the prior fifteen years in his application. *Id*. at 63, 143. In 2006, however, his DOC records indicate that he was "gainfully employed." *Id.* at 253.

detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). But here, plaintiff's daily activities were inconsistent with the alleged severity of his mental impairment. Contrary to plaintiff's claims that he had trouble focusing, remembering, and interacting with people (*see* AR at 56, 73), plaintiff was able to complete tasks and engage in limited regular interaction with people. Moreover, the ALJ did not completely discredit the symptoms. Indeed, the ALJ incorporated certain limitations – e.g., precluding contact with the general public – in his RFC determination. AR at 38.

Third, the ALJ concluded that plaintiff's sparse work history was a reason to find him less credible. *Id.* at 40; *see Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (finding that a poor work history is a clear and convincing reason to discount a claimant's credibility). The ALJ noted that plaintiff had a limited work history, holding only two jobs in the prior twenty years. AR at 40, 143. Although plaintiff's prison terms likely accounted for some of the poor work history, there is no evidence that plaintiff's prison terms were the reason that plaintiff held so few jobs. *See, e.g., id.* at 56, 59, 231. In addition, the ALJ noted that while plaintiff claimed he became unable to work on November 1, 2001 due to his conditions, plaintiff also said he could not remember why he stopped working on October 31, 2001. *Id*. at 40, 142.

Fourth, the ALJ observed that plaintiff was able to participate in a lengthy interview with an SSA employee, during which the employee did not observe any problems with, among other things, plaintiff's understanding, coherency, and talking. *Id.* at 41, 138. The ALJ correctly considered the observations of the SSA employee. SSR 96-7p ("The adjudicator must also consider any observations about the individual recorded by [SSA] employees during interviews."). Although the observations of the SSA employee may not be the sole basis for finding a

1   claimant less credible, here it was one of several bases and not the sole basis. *See*

2   *id.*

3       Fifth, the ALJ concluded that the objective medical evidence did not

4   support plaintiff's symptoms. AR at 41-44. An ALJ "may not reject a claimant's

5   subjective complaints based solely on a lack of objective medical evidence to fully

6   corroborate the alleged severity of pain," but it may be one factor used to evaluate

7   credibility. *Bunnell*, 947 F.2d at 345; *see also Rollins v. Massanari*, 261 F.3d 853,

8   856 (9th Cir. 2001). Here, the ALJ noted that in 2005 and 2009, plaintiff was

9   given a global assessment functioning ("GAF") score of sixty-five, and in 2008, a

10  consultative psychiatrist, Dr. Ernest A. Bagner, opined that plaintiff's GAF score

11  was 70.[5] *Id.* at 41-43, 245, 266, 332. Further, during periods when not medicated,

12  plaintiff did not appear to have problems. In 2005, plaintiff was observed to be

13  functioning well and gainfully employed. *Id.* at 41, 335. And in 2008, Dr. Bagner

14  observed that plaintiff had intact and coherent speech, had a tight thought process,

15  was able to take care of himself and household duties, was alert and oriented, and

16  had normal reality contact. *Id.* at 43, 266. The lack of objective medical evidence

17  to support plaintiff's claims was clear and convincing.

18      Finally, the remaining grounds for the adverse credibility finding –

19  conservative treatment and failure to adhere to treatment plan – were similarly

20  clear and convincing. *Id.* at 41-42; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th

21  Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a

22  claimant's testimony regarding severity of an impairment."); *Tommasetti*, 533 F.3d

23  at 1039 (failure to follow a prescribed course of treatment weighs against a

24

25      [5]   A GAF rating of 61-70 indicates "some mild symptoms [] OR some

26  difficulty in social, occupational, or school functioning [], but generally

27  functioning pretty well, has some meaningful interpersonal relationships." Am.
    Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th

28  Ed. 2000) ("DSM").

1    claimant's credibility).  With regard to plaintiff's treatment plan, the ALJ noted

2    plaintiff was treated with antidepressants and regular follow-up appointments,

3    which was conservative.  AR at 42; *see, e.g., Kellerman v. Astrue*, No. 11-4727,

4    2012 WL 3070781, at *8 (N.D. Cal. Jul. 27, 2012) (finding that a claimant who

5    was only prescribed anti-depressants was receiving conservative treatment).[6]

6    Moreover, plaintiff failed to follow his treatment plan by refusing medication for a

7    period of time and missing many appointments.  *Id*. at 41-42, 195, 231, 253.

8    Although the inability to afford medication and treatment may be a valid reason

9    for failing to adhere to set treatment or a treatment plan, it was inapplicable here.

10   *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (failure to seek treatment

11   may be a basis for an adverse credibility finding unless there was a good reason

12   for not doing so).   Plaintiff testified that he was not taking medication because he

13   was no longer on parole; he could not afford medication otherwise and could not

14   easily go to a free clinic.  *See id.* at 56-57.  But this did not explain why plaintiff

15   stopped his medication in 2005.  *See id.* at 195.  Nor did it explain how plaintiff

16   was then able to resume treatment and medication shortly after the hearing.  *See,*

17   *e.g., id.* at 345.

18        In sum, the ALJ cited multiple clear and convincing reasons supported by

19   substantial evidence for discounting plaintiff's credibility.  Thus, the ALJ's

20   finding was proper.

21   **B.     The ALJ Erred in Part at Step Five, But Such Error Was Harmless**

22        Plaintiff argues that the ALJ erred at Step 5.  P. Mem. at 14-20.

23   Specifically, plaintiff alleges that the ALJ committed three errors:  (1) plaintiff

24   cannot perform the job of a laborer stores; (2) the ALJ failed to ask the VE to

25   _____

26        [6]   Although plaintiff also went to the Behavioral Health Center on a regular
     basis, the purpose of those visits (e.g., psychiatric treatment, substance abuse

27   treatment, anger management treatment) is unclear.  Plaintiff stated that he had
     meetings or classes at the Behavioral Health Center.  AR at 160.

28

1   further explain what he meant by "accommodate;" and (3) the ALJ failed to

2   propound a complete hypothetical to the VE.  *Id.*

3          At step five, the burden shifts to the Commissioner to show that the

4   claimant retains the ability to perform other gainful activity.  *Lounsbury v.*

5   *Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a

6   claimant is not disabled at step five, the Commissioner must provide evidence

7   demonstrating that other work exists in significant numbers in the national

8   economy that the claimant can perform, given his or her age, education, work

9   experience, and RFC.  20 C.F.R. § 416.912(f).

10         ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in

11  evaluating whether the claimant is able to perform other work in the national

12  economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations

13  omitted); *see also* 20 C.F.R. § 416.966(d)(1) (DOT is a source of reliable job

14  information).  The DOT is the rebuttable presumptive authority on job

15  classifications.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ

16  may not rely on a VE's testimony regarding the requirements of a particular job

17  without first inquiring whether the testimony conflicts with the DOT, and if so, the

18  reasons therefor.  *Massachi*, 486 F.3d at 1152-53 (discussing SSR 00-4p).  But

19  failure to so inquire can be deemed harmless error where there is no apparent

20  conflict or the VE provides sufficient support to justify deviation from the DOT.

21  *Id.* at 1154 n.19.   In order for an ALJ to accept a VE's testimony that contradicts

22  the DOT, the record must contain "'persuasive evidence to support the deviation.'"

23  *Id.* at 1153 (quoting *Johnson*, 60 F.3d at 1435).  Evidence sufficient to permit such

24  a deviation may be either specific findings of fact regarding the claimant's residual

25  functionality, or inferences drawn from the context of the expert's testimony.

26  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (as amended).

27         Here, the ALJ asked the VE several hypotheticals.  AR at 78-83.  In

28

1  response to a hypothetical person with plaintiff's RFC, the VE testified that

2  plaintiff could perform the job of a porter at a used car lot, with erosion depending

3  on the length of time a person would have to be seated. *Id*. at 80. The VE also

4  testified that a person with the same limitations but the ability to perform only

5  light work could perform the jobs of a table worker and assembler of electrical

6  equipment. *Id.* In the decision, the ALJ concluded that based on the VE's

7  testimony, plaintiff could perform the jobs of laborer and porter. *Id.* at 45.

8       Plaintiff correctly argues that the VE testified a person with plaintiff's RFC

9  could not perform the job of a laborer at stores. *Id.* at 79-81. The ALJ erred when

10  he determined that plaintiff could perform such job. But the error was harmless

11  because the VE identified other jobs plaintiff could perform, one of which the ALJ

12  cited.

13       Plaintiff's second argument is that the ALJ should have conducted further

14  inquiry regarding the VE's use of the term "accommodate" when testifying about

15  the sit/stand option because the VE may have been improperly applying the

16  "reasonable accommodation" standard under the Americans with Disabilities Act

17  ("ADA"). P. Mem. at 17-19; *see Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S.

18  795, 119 S. Ct. 1597, 143 L. Ed. 2d 966 (1999) (distinguishing how disability is

19  determined under the SSA and ADA). Plaintiff's argument depends on an

20  unreasonable interpretation of the testimony. It was the ALJ who first used the

21  word "accommodate," asking, "Would any of those jobs accommodate that

22  additional [sit/stand] limitation?" AR at 80. The VE responded that "they all

23  would accommodate it, but I think there might be erosion on a couple of them."

24  *Id.* On its face, the VE's testimony clearly shows that he was not talking about

25  individual accommodations pursuant to the ADA, but rather the percentage of the

26  identified jobs an individual with certain limitations could perform, as such jobs

27  are generally performed. Accordingly, plaintiff's second argument is without

28  merit.

1    Finally, plaintiff argues that the ALJ failed to propound a complete

2    hypothetical because he failed to define how much time plaintiff required when he

3    sat or stood every thirty minutes.  P. Mem. at 19-20.  Plaintiff claims this

4    definition was necessary because the VE testified whether the porter job could

5    accommodate the sit/stand limitation would depend on how long the person would

6    have the be seated.  *Id.* at 19.  In fact, the VE testified that with the sit/stand

7    limitation the porter job "would have erosion, depending on how long the person

8    would have to be seated."  AR at 81.  Thus, the VE did not testify that such

9    limitation might erode the position entirely, but instead seemed to indicate that

10   whether there was any erosion would depend on the length of sitting time required.

11   Plaintiff is correct that, on its face, this line of testimony seems to have called for

12   the ALJ to follow up by specifying the length of sitting or standing time in the

13   hypothetical.  But even if the ALJ were required to specify the amount of time

14   plaintiff needed to sit or stand, any such error is harmless.

15   The VE testified that there were approximately 11,000 porter jobs in

16   California, and that, without knowing how long the person would have to be

17   seated, the VE "would erode that right off the top by 25 percent."  AR at 79, 81.

18   There is nothing in the VE's testimony to indicate that even a lengthy period of

19   required sitting time would erode the number of porter jobs available to less than a

20   significant number.  Assuming an unusually high rate of erosion such as eighty

21   percent due to the amount of time plaintiff needed to sit or stand every thirty

22   minutes, there would still be porter jobs in California existing in significant

23   numbers – 2,200 jobs – that plaintiff could perform.  *See Barker v. Sec'y of Health*

24   *& Human Servs.*, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (citing approvingly

25   decisions that have found several hundred jobs "significant").

26   Moreover, although not noted by the ALJ, the VE testified that plaintiff

27   could perform the job of assembler of electrical equipment with no erosion.  AR at

28   80; *see* 20 C.F.R. § 416.967(c) (a claimant who can do medium work can also do

light and sedentary work). Thus, even if the length of time plaintiff required to sit/stand eroded all of the porter jobs, plaintiff could still perform the job of an assembler.

As such, the ALJ's error at step five does not warrant relief. Although the ALJ erred when it concluded that plaintiff could perform the job of laborer, there were other jobs existing in significant numbers that plaintiff could perform.

**V.**

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: March 18, 2013

_____
SHERI PYM
United States Magistrate Judge